MARCHAVICH'S CASE.

Androscoggin.    Opinion April 14, 1924.

*The burden of proof to establish an affirmative proposition is on the party asserting it, and under the Workmen's Compensation Act the finding that an injury is compensable may be supported by reasonable inferences, not based upon surmise, conjecture, guess or speculation. Knowledge of the injury on the part of the employer may be communicated through a foreman of claimant. The findings of the Commission will not be set aside on the ground of its method of procedure unless it abuses its discretionary powers.*

A room foreman in a mill is an agent through whom the employer may be charged with knowledge of an injury, where the claimant failed to give the written notice required by the Act, and if there be evidence of such knowledge on which the decree can rest it will not be set aside.

Unless it clearly appears that the member of the Industrial Accident Commission who heard the case abused his discretionary powers relating to the extent of time between a first and second hearing, his procedure will not be sufficient reason for setting aside his findings.

It may be entirely proper for the Commissioner with the consent, or, unless waived, in the presence of the parties, to view the locus of the accident, not for the purpose of obtaining information or evidence on which to base his award, but for the purpose of better understanding the evidence presented to him at the hearing, yet the findings of the Commissioner must be grounded upon evidence presented under such circumstances as to afford full opportunity for comment, explanation and refutation.

Whether the view of the locus was without the consent or waiver of the respondent, is a substantive claim, and when set up by the respondent's counsel, we see no reason why the burden of proof does not rest upon the party relying upon it. The fair presumption is in favor of the regularity of conduct on the part of a judicial tribunal.

On appeal. Claimant alleges that on February 16, 1922, while in the employment of the Continental Mills in Lewiston as a weaver, he received a compensable injury to his toe being punctured by a small wire. Infection followed resulting in incapacity for several months. A hearing was had and compensation awarded and respondents entered an appeal. Appeal dismissed. Decree sustained with costs for claimant.

The case is fully stated in the opinion..

*Herbert E. Holmes*, for petitioner.

*Andrews, Nelson & Gardiner*, for respondents.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, WILSON, DEASY, JJ.

PHILBROOK, J. This is a workman's compensation case, heard before the Associate Legal Member of the Industrial Accident Commission. Compensation was ordered and by appeal the case comes to this court.

Briefly stated, the record discloses the following occurrences upon which the finding was based. The petitioner was employed as a weaver in the Continental Mills at Lewiston. It was his custom, after arrival at the weave room, to start his loom, remove the shoes he had worn while walking from home, and put on another pair to be worn while he was at work. On the morning of February 16, 1922, he went to his work, as usual, started his loom, and before he had time to change his street shoes for his working shoes he felt a sharp pain in his left big toe. He stopped work, went to Joel J. Sylvester, a second hand, or overseer, in the room where he worked,

told Sylvester that there was something in his toe and that he wanted to consult a doctor. According to the petitioner's testimony Sylvester gave consent to his leaving work. He immediately consulted a doctor who made an examination, did not succeed in removing the cause of pain, but washed and bandaged the toe. This occurrence was on Thursday. On the following day the petitioner returned to the mill, worked during Friday, Saturday, and the following Monday until the noon hour. At that time he told Sylvester that he did not think the doctor had got the wire from his toe and he wanted to go to the hospital. Sylvester said that the petitioner only made complaint of a sore toe, denied that he had any knowledge of an accident, but thought the petitioner's subsequent absence from work was on account of sickness or taking a vacation. Instead of going to a hospital the petitioner went home and called another physician. After some treatment this physician removed from the toe a piece of fine wire about one half inch long. As a result of this operation the petitioner's troubles began to disappear but were not entirely gone at the time of the hearing for compensation.

On April 22, 1922, the petition for award of compensation was filed, in which the petitioner stated that the accident occurred as follows: "Was working around an overhead shafting and in stepping down stepped on a piece of wire carding. Wire went into foot." The wire taken from the petitioner's foot was an exhibit. There was also exhibited a brush or carder, with wire teeth, which customarily hung on a nail near the place where the petitioner placed his shoes and which he used to clean cloth. The wires in this brush were very similar, if not identically like the one taken from the petitioner's foot. The finding of the Associate Legal Member recites "The wire certainly entered the toe; it obviously came from the carder; it must therefore have dropped into the empty shoe during the day, and in some way have worked into the toe the next morning. It is accordingly found that Mr. Marchavich received his injury by accident arising out of and in the course of his employment."

The first contention of the respondents, and the one which they designate as their principal contention, is that there is no evidence of a personal injury by accident arising out of and in the course of the employment. That the burden of proof is on the claimant is a principle of law too well established to need the support of citation

of authorities, but it is equally well established that the finding that the accident is compensable may be supported by inferences, provided those inferences are reasonable, and not based merely upon surmise, conjecture, guess or speculation, for the Accident Board, in the determination of questions of fact, is permitted to draw such inferences from the evidence and all the circumstances of the case as a reasonable man could draw. If the evidence, though slight, is yet sufficient to make a reasonable man conclude in the claimant's favor on the vital points, then his case is proved. *Sponatski's Case*, 220 Mass., 526; *Sanderson's Case*, 224 Mass., 558; *Westman's Case*, 118 Maine, 133; *Larrabee's Case*, 120 Maine, 242. After a careful examination of the record we cannot hold in favor of this first contention.

The second contention of the respondents is that although the claimant requested permission to leave the mill, yet he gave no notice of an accident as required by the Act, nor did the employer have any knowledge that an industrial accident had been suffered. A room foreman, in this case, Mr. Sylvester, is an agent through whom the employer may be charged with knowledge of an injury, where the claimant failed to give the written notice required by the Act, and if there be evidence of such knowledge on which the decree can rest it will not be set aside. *Simmons' Case*, 117 Maine, 175. Although Mr. Sylvester testified that when the claimant asked permission to leave he made no complaint of an accident and that when the petitioner was absent he (Sylvester) presumed that the petitioner was sick or taking a vacation, yet other evidence, including the testimony of the petitioner, caused the Associate Member to find against this contention of the respondents, and the decree will not be set aside by reason thereof.

It appears that the hearing, in the first instance, was held on June 3, 1922, and the respondents claim that this hearing was closed in the usual form. It further appears that a second hearing was held on October 30, 1922, the respondents being represented by counsel. By them, objection to the procedure was made on the ground that the evidence was fully taken out at the first hearing and the case closed, and there should be some end to such cases. The respondents claim that the petitioner failed to prove his case at the first hearing; that without any request or order for continuance the matter rested there; that subsequently the Associate Member refrained

from issuing a decision, but investigated the case, and granted what was in effect a new trial or a rehearing. The respondents also claimed that during the interim between June 3 and October 20, the Associate Member had been to the mill, with claimant's counsel, and carried on an independent and ex parte investigation. Upon these claims the respondents base their third contention and say that such conduct on the part of the Associate Member constitutes reversible error.

That a second hearing was held on October 30th, is clearly shown by the record. Whether the first hearing was closed, adjourned or continued, the record is silent. The decree awarding compensation, made after the second hearing, and not before, contains this statement by the Associate Member; "At the outset, before taking up the merits of the case itself, it may be well to consider the objections made by the attorney for the respondents as to the right of the Commission to hold the continued hearing, the case having been apparently closed at the end of the first hearing. Although such procedure for obvious reasons is not to be encouraged in cases generally, it has always been the policy of the Commission, exemplified in this instance, to permit such further hearing to be held when newly discovered or newly available evidence, before decision, needs to be presented by either party in the interest of justice. . . . . This procedure in exceptional and meritorious cases appears especially important and desirable since after decree has once been rendered, no matter what further evidence may then be discovered, the case cannot of course be re-opened. . (*Connors' Case*, 121 Maine, 37)." Counsel for respondents state in their brief that the Act enjoins a speedy disposition of proceedings. The section referred to (37) does not exactly say that, but does direct that the Commission may prescribe forms and make suitable orders as to procedure adapted to secure a speedy, efficient and inexpensive disposition of all proceedings under the Act. In *MacDonald's Case*, 120 Maine, 52, we held that what constitutes a "speedy, efficient and inexpensive procedure," under the statute, is a question of fact addressed to the discretion of the chairman. "It should be only upon the conclusion that his discretion has been abused that the appellate court should be called upon to exercise its power of review." Akin to this principle is the rule laid down in *Atkins* v. *Field*, 89 Maine, 281, that the "question of further delay was for the presiding justice to decide in the exercise of a sound discretion. The law court will not revise

his action unless it appears that he has clearly abused his discretionary power." We cannot say that in the case at bar there was a clear abuse of discretionary power relating to the extent of time between the first and second hearings although that extent was somewhat longer than would be ordinarily desirable.

As to the claim that between the two hearings the Associate Member visited the mill with claimant's counsel and carried on an independent and ex parte investigation, it should be said that the record shows that the Associate Member did visit the scene of the accident and that as a result, or at least at the visit, additional facts were discovered which were made the subject of record evidence at the second hearing. In a very recent decision of this court, *Hutchinson's Case*, 123 Maine, 250, it was said "It may be entirely proper for the Commissioner with the consent, or, unless waived, in the presence of the parties, to view the locus of the accident, not for the purpose of obtaining information or evidence on which to base his award, but for the purpose of better understanding the evidence presented to him at the hearing, as in case of views by a jury." In *Gauthier's Case*, 120 Maine, 73, it is also held that the findings of the Commissioner "must be grounded upon evidence presented under such circumstances as to afford full opportunity for comment, explanation and refutation." Whether the visit to the mill was without the consent or waiver of the respondents, is a substantive claim set up by the respondent's counsel and we see no reason why the burden of proof does not rest upon the party relying upon it. The fair presumption is in favor of regularity of conduct on the part of a judicial tribunal. But the record is silent upon this question of consent or waiver. Moreover, whatever facts were discovered at the visit were, at the second hearing, so presented "as to afford full opportunity for comment, explanation and refutation." The third contention of the respondents cannot prevail.

Closely connected with the third contention is the fourth, wherein the respondents claim that although the grounds are not recited in the decision itself, yet the testimony shows that the decision must have been based in part, at least, upon the ex parte view and investigation of the Associate Member, and that such member testified in the claimant's behalf. The pages of the record referred to by respondent's counsel as showing testimony given by the Associate member have been examined and while it there appears that the

Associate Member asked questions of a somewhat reluctant, if not biased witness, yet such record fails to meet the claim that the member testified. In view of what we have already said regarding the third contention the fourth cannot prevail.

The fifth and last contention is that at the second hearing the Associate Member erroneously ruled that Mr. Sylvester was the witness of the respondents, and that respondents were prejudiced by the consequent rulings as to the admissibility of questions put to him, and that reversible error was made in the admission of the exhibits. Without entering into a detailed discussion of this two-fold contention we hold that after a careful examination of the record, and the grounds of objection there made, this contention must also fail.

*Appeal dismissed.*
*Decree sustained with costs.*