(No. 6725.   September 28, 1939.)

EMMARETTA B. HANCOCK, Respondent, v. TROY–PARISIAN COMPANY, INC., Employer, and STATE INSURANCE FUND, Surety, Appellants.

[94 Pac. (2d) 674.]

Clarence L. Hillman, for Appellants.

Anderson, Bowen & Anderson, for Respondent.

HOLDEN, J.—Claimant, Emmaretta B. Hancock, had been steadily employed by appellant, Troy-Parisian Company, Inc., of Pocatello, Idaho, for a period of about sixteen years prior to October 4, 1938. On the morning of that day, while reaching across a table at which she was working to get a heavy bolt of apron cloth, her foot slipped, resulting in a ''sort of a cutting pain, short, sharp, sort of a jab at first,'' on her right side.

A few minutes later the manager of the laundry company came along, and in response to an inquiry, claimant informed him she had hurt her side ''pretty badly just now.'' When she got home from the day's work, she examined herself at the point where she had felt the pain and found ''it had puffed all up right over that place where it hurt me so bad and ached.'' Claimant ''didn't work steady after that'' and later, on October 22, 1938, was compelled to quit.

January 9, 1939, Dr. F. M. Ray performed an operation on claimant for ventral hernia ''in the right abdominal wall just opposite the umbilicus.''

February 23, 1939, notice of injury and claim for compensation was given and filed. May 13, 1939, the cause was tried. May 24, 1939, findings of fact and conclusions of law were made and filed and the following order entered thereon:

''WHEREFORE, IT IS ORDERED, and THIS DOES ORDER, That the claimant, Emmaretta B. Hancock, be, and she hereby is, awarded against the defendants, Troy-Parisian Company, Inc., employer, and State Insurance Fund, surety, and each of them, weekly compensation at the rate of $9.35 from the 22nd day of October, 1938, to the 13th day of May, 1939, and for the additional sum of $158.00 for expenses incurred by her.''

The appeal is from the above-quoted order awarding compensation. Appellants contend the evidence is insufficient to support the findings of the board that: (1) The hernia

was the result of the alleged accident; (2) the hernia appeared immediately following the alleged accident; (3) the hernia did not exist in any degree prior to the alleged accident; (4) claimant reported the hernia within thirty days after the alleged accident.

Claimant testified as follows:

"Q. Will you relate what happened out of which this claim arose?

"A. Yes. We had a heavy bolt of cloth to make aprons out of lying on my table to my right and I wanted to cut some aprons out. Instead of getting up and going around the table, I reached over and my foot slipped a little and it hurt my side real bad."

" . . . .

"Q. Where was this pain you got?

"A. In my right side.

"Q. Can you describe the kind of pain it was?

"A. It was sort of a cutting pain, short, sharp, sort of a jab at first.

"Q. Immediately following that was it sore?

"A. Yes, it was sore from then on."

" . . . .

"Q. Do you remember if you told Mr. Isham that day about this?

"A. Yes. I remember. He usually came along and asked me how I was and he did this morning and I told him I had hurt my side pretty badly just now and that is all I remember saying."

" . . . .

"Q. That night when you went home did you examine your side?

"A. Yes.

"Q. What did you find?

"A. I found it had started to swell some.

"Q. Describe the swelling or condition you found in your side that night?

"A. It had puffed all up right over that place where it hurt me so bad and ached.

"Q. Had that swelling ever been there before?

"A. No, that swelling hadn't ever been there before."

"  . . . .

"Q. In regard to the swelling on your side, how long did that last?

"A. It lasted until I was in the hospital.

"Q. Until you were operated on?

"A. Yes."

Dr. F. M. Ray, a witness for claimant, testified:

"Q. Upon your examination of Mrs. Hancock, could you determine whether it was an old or new hernia?

"A. No. I don't know from my examination except that there was quite a definite ring around this area that was open in the abdominal wall, indicating that it was a hernia of some time standing.

"Q. From your findings there did you, could you place any definite time on that?

"A. No definite time. No."

Amy Hancock, a witness for and a step daughter-in-law of claimant, testified:

"Q. Prior to October 3, 1938, had Mrs. Hancock ever complained to you of pain?

"A. No.

"Q. After October 3, 1938, did she complain of pain? October 4th, I should say?

"A. Yes, she did.

"Q. Did she appear to you to be in pain?

"A. Yes, she did.

Mrs. Isabel Isham, a witness for appellants, testified that:

"A. . . . . at the time her side started swelling, she showed me that and said she was going to have to quit work it hurt her so bad."

"  . . . .

"Q. Do you remember that after October 4 she frequently quit in the middle of the day?

"A. Oh, yes, I had to take her place then.

"Q. She never did do that before October 4, did she?

"A. No. She worked every day steady before that.

"Q. She never complained of this bulging or pain in her side prior to that had she?

"A. No. Not like that. After that she would come to work and she would say 'The minute I start reaching, my side starts hurting and I don't think I can stay.'

"Q. That was after October 4?

"A. Yes."

The above-quoted testimony clearly, and without dispute, shows: That there was an accident; that as a result of the accident claimant suffered a hernia, in that it was later so diagnosed and that she was operated on therefor; and, further, that she had never before had a swelling or puffing or experienced any pain on her right side; that claimant reported the hernia within thirty days in that she immediately told the manager of appellant Troy-Parisian Company, Inc., she had hurt her side "pretty badly just now"; that while she did not tell him she had just suffered a hernia, she did give him all the information she had and that was sufficient (*Page v. State Ins. Fund*, 53 Ida. 177, 182, 22 Pac. (2d) 681); that the hernia appeared immediately following the accident and that it did not exist in any degree prior thereto, in that when claimant returned home after the days' work she found her right side swollen and puffed up, and that, as stated above, she never before had had a swelling or puffing up or experienced any pain on her right side where the operation was later performed.

The order of the Industrial Accident Board should be affirmed, and it is so ordered. Costs awarded to respondent.

Ailshie, C. J., and Budge, Givens, Morgan, JJ., concur.